USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __5/27/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                   :

UNITED STATES OF AMERICA,      :

                                   :

             v.            :

                                   :

SAJID JAVED,                 :

                                   :

                    Defendant.   :

                                   :

------------------------------------------------------------X

16-CR-601 (VSB)

**OPINION & ORDER**

VERNON S. BRODERICK, United States District Judge:

Before me is motion of Sajid Javed ("Defendant" or "Javed") seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and requesting that I reduce his sentence to time served and supervised release with a condition of home confinement ("Motion"). (Comp. Rel. Mot. 1.)[1] Because Javed has not begun to serve his sentence of imprisonment, and the § 3553(a) factors weigh against reducing Javed's sentence, Javed's Motion is DENIED.

## I.    Background and Procedural History

On April 19, 2018, Javed pled guilty to one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 371. (Doc. 57.) Javed's Presentence Investigation Report ("PSR") calculated a Guidelines range of 51 to 60 months' incarceration. (PSR ¶ 110.)[2] On October 23, 2020, after hearing arguments from the parties, including arguments from defense counsel regarding Javed's various heath ailments and family circumstances, I sentenced Javed to 30 months' imprisonment. (*See* Sentencing Tr. 22–24, 41–42.; Doc 103, Judgment.)[3] At

---

[1] "Comp. Rel. Mot." refers to Javed's memorandum of law in support of his motion for compassionate release, filed on April 1, 2021. (Doc. 108-12.)

[2] "PSR" refers to Javed's revised final Presentence Investigation Report, filed on September 24, 2020. (Doc. 96.)

[3] "Sentencing Tr." refers to the transcript of Javed's sentencing on October 23, 2020. (Doc. 99.)

sentencing, I also noted that "when I sentence people to a term of imprisonment, that's what I believe they should serve," and that "I underst[ood] the current circumstances." (Sentencing Tr. 30:8-10.) Additionally, I explicitly considered Javed's family circumstances and health ailments when conducting my § 3553(a) analysis. (*See id.* at 36–38.) I set a voluntary surrender date of January 7, 2021, but noted that I would be amenable to extending the date in light of the "current COVID-19 crisis." (*Id.* at 43:21-24.)

On January 4, 2021, Javed filed a letter requesting that his voluntary surrender date be adjourned to April 15, 2021. (Doc. 104.) I granted his request. (Doc. 105.) On April 1, 2021, Javed filed the instant motion for compassionate release, and requested that his voluntary surrender date be adjourned to June 15, 2021 so that I could consider his Motion. (Doc. 108.) I granted this request. (Doc. 109.)

On April 23, 2021, the Government filed a letter motion opposing Javed's Motion, (Govt. Opp.)[4] Additionally, the Government indicated that Javed had received both doses of the Pfizer-BioNTech COVID-19 vaccine ("Pfizer Vaccine"). (*Id.*) Thereafter, I directed Javed to file any reply by May 3, 2021, and stated that he should address what impact, if any, his receipt of the vaccine has on his request. (Doc. 114.) After I extended Javed's time to file a reply, (Doc. 116), Javed filed a reply in support of his Motion on May 7, 2021. (Doc. 117.)

## II.    Discussion

Javed's Motion seeks compassionate release on numerous grounds, including that his medical conditions make him more susceptible to COVID-19, "that the conditions of confinement that [he] will face are far harsher than those contemplated at sentencing," and that

---

[4] "Govt. Opp." refers to the Government's letter submitted in opposition to Javed's Motion, filed on April 23, 2021. (Doc. 112.)

Javed's brother, the intended caretaker for Javed's children during his incarceration, is terminally ill. (Comp. Rel. Mot. 7–10.) The Government opposes his Motion on the grounds that Javed's Motion is not properly before me because he is not in BOP custody or at a facility run by any other entity, Javed fails to present "extraordinary and compelling circumstances," and that the § 3553(a) factors weigh against a sentence reduction. (Govt. Opp. 4–10.)

### A. *Applicable Law*

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Section 3582(c)(1)(A)(i), the compassionate release statute, provides one such exception. The compassionate release statute permits a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[5] 18 U.S.C. § 3582(c)(1)(A). The moving party bears the burden of proving that extraordinary and compelling reasons exist. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.")); *see also United States v. Clarke*, No. 09 Cr. 705(LAP), 2010 WL 4449443, at *1

---

[5] The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13, although I note that the Sentencing Guidelines have not yet been revised to take into account the First Step Act. *United States v. Russo*, 454 F. Supp. 3d 270, 273 (S.D.N.Y. 2020). However, the Second Circuit recently interpreted § 1B1.13 in light of the First Step Act, and concluded that when a "compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it." *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). "Because Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Id*. "However, courts remain free – even after *Brooker* – to look to § 1B1.13 for guidance in the exercise of their discretion." *United States v. Burman*, No. 16 Cr. 190 (PGG), 2021 WL 681401, at *5 (S.D.N.Y. Feb. 21, 2021) (internal quotation marks omitted).

(S.D.N.Y. Oct. 29, 2010) ("[I]f the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.") (quoting *Butler*, 970 F.2d at 1026); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

Until recently, a court could not order compassionate release unless the BOP requested such relief on a prisoner's behalf by filing a motion. *See* U.S.S.G. § 1B1.13 (stating, among other things that "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)"); *see also Gotti*, 433 F. Supp. 3d at 614 ("Until last December, a court could not modify a defendant's duly-imposed sentence on compassionate release grounds unless it received a motion from the Bureau of Prisons asking that the court consider such modification."). However, in December 2018, Congress passed the First Step Act, which did away with BOP's unilateral ability to deny a prisoner compassionate release but did not remove the BOP from the process entirely. *See id.* The statute is clear that a court may only grant compassionate release "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the "opportunity to correct [their] own mistakes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, it

4

promotes efficiency, since claims "generally can be resolved much more quickly and

economically in proceedings before an agency than in litigation in federal court." *Id.*

"The provenance of an administrative exhaustion requirement determines its scope."

*United States v. Monzon*, No. 99cr157 (DLC), 2020 WL 550220, at *1 (S.D.N.Y. Feb. 4, 2020).

There are two types of exhaustion requirements: jurisdictional requirements and non-

jurisdictional requirements. Jurisdictional exhaustion requirements "govern a court's

adjudicatory authority" and are not subject to any exceptions. *Gonzalez v. Thaler*, 565 U.S. 134,

141 (2012) (internal quotation marks omitted). Non-jurisdictional requirements, also referred to

as "claim-processing rules," can be "forfeited if the party asserting the rule waits too long to

raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). The Second Circuit has not yet

squarely answered the question of whether the exhaustion requirement of § 3582(c) is

jurisdictional.[6] *See Monzon*, 2020 WL 550220, at *2.

### B. *Application*

It is undisputed that Javed is not currently serving his term of imprisonment at a BOP

facility or any other facility. (*See* Doc. 109) (extending Javed's voluntary surrender date to June

15, 2021.) Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), a defendant may bring a compassionate

release motion only where "the defendant has fully exhausted all administrative rights to appeal a

---

[6] Other courts of appeal are split on the question of whether section 3582(c) as a whole is jurisdictional or non-jurisdictional. *Compare United States v. Castenada-Ulloa*, 818 F. App'x 813, 815–16 (10th Cir. 2020) (considering section 3582(c) a jurisdictional rule), *United States v. Spears*, 824 F.3d 908, 916 (9th Cir. 2016); *United States v. Williams*, 607 F.3d 1123, 1125–26 (6th Cir. 2010), *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010), *United States v. Harris*, 574 F.3d 971, 972–73 (8th Cir. 2009), *and United States v. Freeman*, 659 F. App'x 94, 98 (3d Cir. 2016), *with United States v. May*, 855 F.3d 271, 274–75 (4th Cir. 2017) (considering section 3582(c) a claim-processing rule), *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015), *and United States v. Harris*, 989 F.3d 908, 910–11 (11th Cir. 2021) (finding section 3582(c) exhaustion requirement non-jurisdictional). And while the Second Circuit has not weighed in on whether the exhaustion requirement of section 3582(c)(1)(A) is jurisdictional, it has, "in a related context . . . firmly disagreed with the characterization by certain other circuits that § 3582(c)(2) is jurisdictional." *United States v. Haney*, 454 F. Supp. 3d 316, 319 (S.D.N.Y. 2020) (citing *United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013)).

failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  The Second Circuit has yet to speak on the issue of whether the statute requires that a defendant be in BOP custody at the time of his compassionate release motion.  *See United States v. Johnson*, No. 16-CR-457-1 (NGG), 2021 WL 466782, at \*2 (E.D.N.Y. Feb. 9, 2021).  Courts within this Circuit have denied compassionate release motions as premature where the defendant had not begun serving his or her sentence, observing that "[b]y its plain terms, the section applies only to those defendants who have begun serving their term of imprisonment at a BOP facility."  *United States v. Jordan*, 472 F. Supp. 3d 59, 62–63 (S.D.N.Y. 2020) (internal quotation marks omitted); *United States v. Konny*, 463 F. Supp. 3d 402, 404 (S.D.N.Y. 2020); *see also United States v. Spruill*, No. 3:18-CR-0022-10(VLB), 2020 WL 2113621, at \*3 (D. Conn. May 4, 2020) (holding that defendant's motion for compassionate release was premature because he had not yet reported to BOP); *accord United States v. Picardo*, No. CR 19-401 (SRC), 2020 WL 6501730, at \*2 (D.N.J. Nov. 5, 2020) ("the entire scheme of the provision contemplates that the defendant seeking relief has already begun serving his or her sentence").  Conversely, other courts within the Circuit "have granted sentence reductions under this section to defendants who served substantial portions of their sentences but were no longer in BOP custody when they brought the relevant motions."  *Johnson*, 2021 WL 466782, at \*2; *see United States v. Austin*, 468 F. Supp. 3d 641, 643–44 (S.D.N.Y. 2020); *United States v. Thrower*, 495 F. Supp. 3d 132, 139–40 (E.D.N.Y. 2020).

Javed cites to *Thrower* in support of his argument that his Motion is properly before me. (*See* Comp. Rel. Mot. 6.)  *Thrower* and *Austin*, a case with similarly unique facts, are factually inapposite.  *Thrower* involved a defendant whose sentence was vacated after he had served 149

months in prison; thereafter, the Second Circuit reversed the decision, and remanded the case for reinstatement of the original sentence. 495 F. Supp. 3d at 134. In holding that she could decide the defendant's compassionate release motion, Judge Allyne Ross explained that she "agree[d] that the exhaustion requirement indicates that Congress assumed the mine-run of defendants seeking sentence reductions under § 3582(c)(1)(A) would be in custody," and that this "assumption may support interpreting the statute to exclude the defendants in *Konny* and *Spruill*, who awaited incarceration for the first time after being sentenced in the normal course—a common scenario Congress likely considered." *Id.* at 139. She noted, however, that Congress likely had not considered the "peculiar facts" before her, and cautioned that she "interpret[ed] § 3582(c)(1)(A) only to conclude that Mr. Thrower, in his specific circumstances, may seek a sentence reduction under the statute, and nothing more." *Id.* at 139–40; *see also Austin*, 468 F. Supp. 3d at 644 (describing the situation as "narrow and exceptional"). Given that Javed continues to await incarceration for the first time, "a common scenario Congress likely considered," *Thrower,* 495 F. Supp. 3d at 139, I join the other courts in this Circuit and find that under these circumstances, Javed's motion is premature.[7]

Additionally, Javed argues he has exhausted his administrative remedies because defense counsel submitted a request to the warden of the facility where he is designated, and that BOP replied that the warden would consider Javed's request when he is in BOP custody. (Comp. Rel. Mot. 6–7; *see* Doc. 108-10). BOP's response, however, only confirms that in these

---

[7] I am also not persuaded by Javed's citations to factually inapposite cases which involved inmates serving their terms of imprisonment in non-BOP facilities, *see United States v. Hernandez*, 451 F. Supp. 3d 301 (S.D.N.Y. 2020); *United States v. Graham*, No. 16-cr-786-02 (NSR), 2020 WL 5604050 (S.D.N.Y. Sept. 17, 2020); *United States v. Barajas*, No. 18-cr-736-04 (NSR), 2020 WL 3976991 (S.D.N.Y. July 13, 2020); *United States v. Levy*, No. 16-cr-270 (ARR), 2020 WL 2393837 (E.D.N.Y. May 12, 2020); or by Javed's citation to a case outside of this jurisdiction that ultimately denied the defendant's request for compassionate release, *see United States v. Hussain*, No. 16-cr-00462-CRB-1, 2020 WL 5910065, at *3–4 (N.D. Cal. Oct. 6, 2020).

circumstances, such a request cannot be considered until a defendant is in BOP custody.[8]  *Cf.*

*Austin*, 468 F. Supp. 3d at 644 (noting that in response to defendant's compassionate release

motion, BOP "did not deny that motion on the ground that [the defendant] had not yet re-

surrendered, or on any other ground, but simply failed to act.").

 Finally, while I am sympathetic to Javed's health complications, his family situation, and

the impact of the COVID-19 pandemic on the criminal justice system, I find that even assuming

*arguendo* that Javed's Motion was not premature and he had presented "extraordinary and

compelling" reasons for a sentencing reduction, a finding I do not make here, the § 3553(a)

sentencing factors weigh against reducing his sentence.

 After sentencing, Javed experienced numerous health complications—he was

hospitalized for unstable angina, underwent a left heart catherization, and had two drug-eluding

stents placed, including one across a newly discovered legion.  (Comp. Rel. Mot. 7–8; Reply 1–

2.)[9]  Javed currently attends cardiac rehabilitation and cardiac consultations on a bi-weekly basis.

(Doc. 108-8 at 2.)  Most recently, his cardiologist recommended that Javed "[c]ontinue

aggressive medical management and risk factor modification."  (Doc. 117-2 at 2.)  His primary

care physician states that Javed is "suffering from severe coronary artery disease, having already

suffered a myocardial infarction and a recent secondary procedure.  Continuing monitoring,

treatment and medication are vital to his well being."  (Doc. 108-8 at 3.)

 In making my sentencing determination, I generally considered Javed's health issues, and

noted that I believed his "ailments can be monitored, and [Javed] can receive medication in

---

[8] To the extent that Javed requests that I convert his sentence to one of home confinement, which he appears to request at various places within his Motion papers, (*see* Comp. Rel. Mot. 12–13; Doc 117 at 4), this "is not a proper request under" 18 U.S.C. § 3582(c)(1)(A), *Konny*, 463 F. Supp. 3d at 405 ("the authority to place a prisoner in home confinement rests with the BOP").

[9] "Reply" refers to Javed's reply in support of his Motion, filed on May 7, 2021.  (Doc. 117.)

prison. In other words, there are other folks who have diabetes and heart issues who are incarcerated." (Sentencing Tr. 37–38). Undoubtedly, Javed's health has become less stable since my initial sentencing determination; however, I believe his current conditions can be monitored, and he can continue his medications while incarcerated.

Similarly, while Javed asserts that his family situation has changed since sentencing because his brother who planned to care for Javed's young children is now terminally ill, (Comp. Rel. Mot. 10), at sentencing I stated that I would consider his family circumstances, but observed that:

> most, if not all, of the defendants who appear before me and my colleagues, there's collateral consequences to their criminal conduct and in connection with their sentencing. In other words, unfortunately, there are family members who are going to be hurt by it -- wives, uncles, mothers and sons and daughters. So many folks have children that are going to suffer if someone is sentenced to a term of imprisonment.

(Sentencing Tr. 37:7-16.) I considered the circumstances of the offense, and noted that Javed had "been convicted of a serious crime," and that I did not believe that his conduct could be described as "sort of a one-shot deal." (*Id.* at 34–35.) I also note that I granted numerous and extensive adjournments in this matter to permit Saira Sajid, Javed's wife, to complete her medical training based, in part, on Defendant's argument that she would be required to quit her residency program to care for the couple's children. Considering all of this, I imposed a sentence of 30 months' incarceration—a sentence well below the Guidelines range—and explained that "when I sentence people to a term of imprisonment, that's what I believe they should serve." (*Id.* at 30:8-9.) Additionally, given that Javed's brother has been treated for cancer since at least November 2020, (*see* Doc. 108-9), Javed and his wife have had ample time to explore caretaking options for their children. Considering Javed's wife's employment as a doctor, (*see* Doc. 108 at 1), they are likely not without the means to pay for childcare during Javed's incarceration.

9

Lastly, Javed's argument that his conditions of confinement will be harsher than those contemplated at sentencing is simply not true.  At the time of Javed's sentencing, the COVID-19 pandemic had been ongoing for more than half a year,[10] more than 85,000 new COVID-19 cases had been reported that day,[11] and no vaccines were approved for use in the United States.[12]  In fact, Javed argued during his sentencing about the risks posed by COVID-19.  Currently, the number of new cases reported is less than half,[13] 846 of the 1,230 inmates at Javed's designated facility, USP Canaan, have been fully vaccinated,[14] and Javed himself has received both doses of the Pfizer Vaccine, (Govt. Opp. 3).  While conditions of confinement are undoubtably more difficult during a pandemic, I considered this in making my initial sentencing determination, and, in light of the vaccines, it is likely the circumstances have improved in BOP facilities since I initially sentenced Javed.  In short, Javed essentially asks me to re-sentence him, and I see no reason to do so here.  If Javed needs more time to deal with his ongoing health complications or to arrange for childcare while he is incarcerated, he can make an application to me demonstrating good cause to further postpone his surrender date.

---

[10] The World Health Organization declared the coronavirus a pandemic on March 11, 2020.  *Listings of WHO's response to COVID-19*, https://www.who.int/news/item/29-06-2020-covidtimeline (last visited May 26, 2021).

[11] On October 23, 2020, 85,297 new COVID-19 cases were reported in the United States.  *Coronavirus in the U.S.: Latest Map and Case Count*, The New York Times, https://www.nytimes.com/interactive/2021/us/covid-cases.html (last visited May 26, 2021).

[12] On December 11, 2020, the U.S. Food and Drug Administration issued the first emergency use authorization for a COVID-19 vaccine.  *FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine*, FDA, https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19  (last visited May 26, 2021).

[13] 22,581 new COVID-19 cases were reported in the United States on May 25, 2021.  *Coronavirus in the U.S.: Latest Map and Case Count*, The New York Times, https://www.nytimes.com/interactive/2021/us/covid-cases.html (last visited May 26, 2021).

[14] *COVID-19 Vaccination Implementation*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/(last visited May 26, 2021); *USP Canaan*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/caa/ (last visited May 26, 2021).

## III.     Conclusion

For the reasons stated above, Javed's motion for compassionate release is DENIED.  The

Clerk of Court is respectfully directed to close the open motions at docket entries 108 and 117.


SO ORDERED.

Dated:     May 27, 2021
           New York, New York

Vernon S. Broderick
United States District Judge